UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

TODD C. HAMILTON,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

Case No.  1:15-CV-945

HON. ROBERT HOLMES BELL

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff Todd Hamilton seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

### STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they

are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was fifty-three years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.48, 113, 127.) He obtained two bachelor's degrees in art and science, and was previously employed as a quality controller in the areas of pharmaceuticals, paper manufacturing, and printing. (PageID.74, 79–80.) Plaintiff applied for benefits on April 28, 2014, alleging that he had been disabled since October 10, 2013, due to chronic thrombocytopenia and other lymphatic disorders. (PageID.113, 127, 202–209.) Plaintiff's applications were denied on October 30, 2014, after which time he requested a hearing before an ALJ. (PageID.146–66.) On

March 13, 2015, Plaintiff appeared with his counsel before ALJ James Prothro for an administrative hearing with testimony offered by Plaintiff and a vocational expert (VE). (PageID.67–109.) In a written decision dated May 15, 2015, the ALJ determined that Plaintiff was not disabled. (PageID.48–66.) On July 24, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.29–38.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Prothro determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (PageID.53.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) essential thrombocytosis/thrombocythemia; (2) excessive daytime sleepiness; (3) hyperthyroid; (4) low testosterone (secondary to history of cancer); and (5) mood disorder (secondary to medical condition). (PageID.53.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.54–56.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform less than the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c). He can occasionally climb, balance, and push-pull with the legs. He must avoid concentrated exposure to hazards, and he is limited to simple work and to no fast-paced work.

(PageID.56.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of his past relevant work. (PageID.60.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform the following work: production helper (8,000 Michigan jobs), machine feeder (7,000 Michigan jobs), and laundry laborer (6,000 Michigan jobs). (PageID.103–105.) Based on this

record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy.  (PageID.61–62.)

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from his alleged onset date through the date of decision.  (PageID.62.)

## DISCUSSION

### 1. The ALJ Properly Considered the Medical Opinions in the Record.

Plaintiff begins his argument by claiming "[t]he ALJ erred by rejecting the opinions from every medical source that has ever examined" him.  (PageID.636.)  Despite this broad assertion, the Court finds Plaintiff has raised a cognizable claim against only two individuals: Dr. Muhammad Rafi and Ms. Laura Kracker.

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record."  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data."  *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)).  The ALJ may reject the opinion of a treating physician where it is unsupported by

the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

A. Dr. Rafi

The ALJ discussed several opinions from Dr. Rafi. Two of them, dated May 21, 2014, and January 19, 2015, are largely identical documents containing the doctor's answers to check-box or short answer questions. On these documents, Dr. Rafi indicated that Plaintiff generally had no difficulties in lifting and carrying, as well as in reaching, handling, or fingering. (PageID.318–319, 606–607.) In three notable areas, however, he noted that Plaintiff was further impaired than that found by the ALJ. Specifically, Dr. Rafi found that during an eight-hour workday, Plaintiff could only work in a seated position for two hours, and in a standing or walking position for less than one hour. (PageID.318, 606.) Dr. Rafi also determined that Plaintiff's fatigue

would frequently interfere with his attention and concentration during the workday. (PageID.319, 607.) Finally, Dr. Rafi stated Plaintiff would need to take unscheduled breaks, four to five times a day, lasting for twenty minutes each. (PageID.319, 607.) Importantly, either on the May 21 or the January 19 questionnaire, Dr. Rafi indicated that each of these limitations were "per patient."

The ALJ also discussed a January 19, 2015, treatment note from Dr. Rafi that contained further statements. On it, Dr. Rafi stated Plaintiff was diagnosed with thrombocythemia and was being treated with hydroxyurea. (PageID.602.) His sole statement regarding Plaintiff's functional abilities was that: "[t]here are no limitations on his activities." (PageID.602.) While Dr. Rafi observed that Plaintiff's thrombocythemia was likely to be a lifelong condition, he found that "[a]s far as his excessive sleeping is concerned, I am not an expert on that because it is subjective and I have no objective way to quantify it." (PageID.602.)

This ALJ discussed Dr. Rafi's opinions as follows:

Muhammad Rafi, M.D., assessed on May 21, 2014; in November 2014; and following a January 19, 2015 appointment that the claimant was unable to work because of excessive sleepiness and decreased memory. The doctor noted, however, that the claimant was able to lift over 50 pounds frequently and that the claimant had no objective impairment that would cause him to be absent from work. Notable, in an inconsistent manner, in another report date January 19, 2015, Dr. Rafi stated that the claimant had no limitations on his activities because of his medical condition. The residual functional capacity assessment that Dr. Rafi completed on May 21, 2014, was clearly based upon the claimant's subjective complaints of sleepiness inasmuch as Dr. Rafi admitted on page 5 of Exhibit 1F that a limitation for taking unscheduled breaks was per the claimant. In addition, at page 6 of Exhibit 1F, Dr. Rafi stated that further neurological and psychological evaluation was necessary to assess the claimant's sleep disorder. These have occurred with Dr. Ashman, who has indicated that stimulant medication can counter any hypersomnolence effects. Notably also, the claimant was first diagnosed in August 2010 with essential thrombocythemia and he was started on Hydroxyurea. He took doses of 500 mg to 2000 mg

7

> and worked until October 2013, and Dr. Rafi was skeptical of any medication side effects even in September 2014.
>
> Based upon the conflicts contained within Dr. Rafi's assessment and the apparent reliance upon the claimant's subjective complaints, the undersigned concludes that little weight is to be given to Dr. Rafi's assessments.

(PageID.59) (internal citations omitted.) The ALJ articulated specific reasons, which are more than supported by the record, for discounting the doctor's opinions. As the ALJ correctly observed, a review of the opinion makes clear that Dr. Rafi based his statements to a great extent, if not almost exclusively, on Plaintiff's subjective allegations rather than the results of examination or objective testing. It is well established that an ALJ may discount a physician's opinion that is based on a plaintiff's subjective reports. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 (6th Cir. 2009) (finding that the opinion of a treating physician "was not entitled to deference because it was based on [the claimant's] subjective complaints, rather than objective medical data"). Furthermore, the ALJ correctly found that the limitations were in direct conflict with Dr. Rafi's statement that Plaintiff had no limitations on his activities. In sum, the ALJ's decision to give less than controlling weight to Dr. Rafi's opinion is supported by substantial evidence.

Plaintiff argues that even if Dr. Rafi's opinion was not entitled to controlling weight, the ALJ nonetheless erred in failing to evaluate the opinion under the factors articulated in 20 C.F.R. §§ 404.1527 and 416.927, and that had he done so, the ALJ would have afforded more deference to the opinion. (PageID.638.) Plaintiff is correct that even when a treating source's medical opinion is not given controlling weight, it should not necessarily be completely rejected. Rather the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See* SSR 96–2p, 1996 WL 374188 at

*4 (S.S.A. July 2, 1996)[2]; *see also Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 372 (6th Cir. 2006). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g.*, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

Here, the record demonstrates that the ALJ recognized his responsibility under the regulations, noting that he had to consider the opinion evidence in accordance with, among other things, 20 C.F.R. §§ 404.1527, 416.927, and SSR 96–2p. (PageID.56.) The ALJ found that the proffered restrictions listed in the doctor's opinion were not well supported by the record, and in doing so, the ALJ expressly considered several of the factors, including the consistency and supportability of the opinion. (PageID.59.) While the ALJ could have provided a more detailed analysis of the factors, what ultimately matters is whether the ALJ's reasons for discounting a treating source's opinion are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (quoting SSR 96–2p, 1996 WL 374188, at *5). The ALJ has done so here.

B.   Ms. Kracker

On October 28, 2014, Ms. Laura Kracker, a limited license psychologist, examined Plaintiff on behalf of the state disability agency. Ms. Kracker provided a history of Plaintiff,

---

[2] Social Security Rulings (SSRs) "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 498 (6th Cir. 2006).

including his medical history, personal history, and daily functioning. (PageID.420–421.) She also provided her general observations about Plaintiff and a description of Plaintiff's mental status. (PageID.421–422.) She diagnosed Plaintiff with a moderate to severe mood disorder, and determined he had a "very guarded" prognosis. (PageID.423.) She concluded that:

> The client was able to maintain some eye contact and follow simple instructions during the course of the evaluation. The client may have mild to moderate difficulty being able to relate appropriately with others at this time, due to his emotional concerns / frustration. The client is dealing with mood/ emotional/ frustration issues, which may have an impact on his overall functioning. He would be able to do some very simple tasks or routines. He would likely have some difficulty sustaining such tasks, especially during periods of exacerbation of symptoms.

(PageID.423.) Dr. Kracker's opinion was cosigned by Dr. William D. Brooks, Ed.D., a licensed psychologist. (PageID.424.) The ALJ gave "little weight" to the psychologists' opinion because "[t]he assessment of the consultative psychologists is extremely vague and does not provide for a function-by-function evaluation of the claimant's mental capacity." (PageID.60.) Plaintiff disagrees with the ALJ's characterization of the opinion, arguing that the psychologists gave "very specific statements about what Plaintiff could do on a sustained basis." (PageID.639.)

The ALJ properly determined that the psychologists were consultants who only examined Plaintiff on one occasion. As such, the ALJ was not "under any special obligation to defer to [their] opinion or to explain why he elected not to defer to it." *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 744 (6th Cir. 2011); *see Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539–40 (6th Cir. 2014). The opinions of consultative examiners are not entitled to any particular weight. *See Peterson*, 552 F. App'x at 539; *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012). The ALJ is responsible for weighing medical opinions. *See Buxton v. Halter*, 246

F.3d 762, 775 (6th Cir. 2001); *see also Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."); accord *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009). With that in mind, the Court finds no reason to disturb the ALJ's decision here.

While continuing to assert the psychologists provided specific limitations, Plaintiff claims, *arguendo*, that if the ALJ found the psychologists' opinion was vague, he had a duty to re-contact the consultative examiners under 20 C.F.R. §§ 404.1519p and 416.919p. (PageID.640.) These regulations state that the Commissioner will re-contact a consultative examiner for further information if the initial report "is inadequate or incomplete." 20 C.F.R. §§ 404.1519p(b), 416.919p(b). The Court does not agree with Plaintiff that the psychologists' opinion was inadequate or incomplete such that the ALJ was required to request clarification. The psychologists provided a history of Plaintiff's illness and subjective complaints, a description of their observations about Plaintiff's mental status, his answers to questioning, and his diagnoses and prognosis. (PageID.420–423.) Regardless of the gloss that the ALJ may have placed on their opinion, with the information that the psychologists provided, the ALJ had an adequate basis to find their opinion was entitled to little weight. *See Dooley v. Comm'r of Soc. Sec.*, No. 16-5146, 2016 WL 4046777, at *7–8 (6th Cir. July 28, 2016) (finding that an ALJ did not violate §§ 404.1519p and 416.919p when the ALJ had found the examiner's opinion to be vague and unsupported by the evidence).

Finally, the Court notes that even though the ALJ purported to give only "little weight" to the psychologists' opinion, the decision largely adopts their findings. For example, at step three the ALJ found that Plaintiff had "mild difficulties" in social functioning, consistent with

Ms. Kracker's opinion that Plaintiff had mild to moderate difficulties in relating appropriately with others. (PageID.55, 423.) The ALJ also found that Plaintiff was limited to simple and slow-paced work. (PageID.56.) Again, this is consistent with the psychologist's opinion that Plaintiff would be able to complete simple tasks, albeit with difficulty. (PageID.423.) Accordingly, the Court finds no reversible error here.

### 2. The ALJ's RFC Determination Is Supported By Substantial Evidence.

Plaintiff claims that the ALJ's RFC finding is unsupported by substantial evidence because the ALJ improperly considered his daily activities, failed to provide a narrative discussion, and played doctor in evaluating the medical evidence.[3] (PageID.640–642.) The Court disagrees.

Relying on *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248–49 (6th Cir. 2009), Plaintiff argues that the ALJ could not consider his activities of daily living to find that he had the ability to perform a limited range of medium work. (PageID.641.) The language in *Rogers* that Plaintiff's relies on concerns a credibility analysis. There, the Sixth Circuit found that the ALJ had mischaracterized the plaintiff's testimony to determine that the plaintiff was fairly active. *Id.* at 248. The case does not stand for the proposition that an ALJ may not base a RFC determination on a claimant's daily activities. Indeed, according to SSR 96–8p, the RFC assessment "must include" a discussion of the nonmedial evidence, which includes such activities. SSR 96–8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996). The Court finds no error here.

Plaintiff further claims that the ALJ failed to follow the narrative discussion

---

[3] To the extent Plaintiff raises additional arguments in these pages, the Court finds the arguments to be waived. "'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)).

requirement contained in SSR 96–8p by failing to note which evidence supports the RFC. (PageID.642.) According to SSR 96–8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8p, 1996 WL 374184, at *7. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," discuss "why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence," "consider and address medical source opinions," and "[i]f the RFC assessment conflicts with an opinion from a medical source . . . explain why the opinion was not adopted." *Id.*

The portion of the ALJ's opinion dealing with the RFC assessment spans five pages and includes a summary of Plaintiff's testimony, the ALJ's credibility analysis, a discussion of the medical evidence, and a summary of the opinion evidence. After discussing these records, the ALJ concluded:

> In summary, the above residual functional capacity assessment is supported by the objective medical findings, the claimant's course of treatment, his medication usage, and his daily activities.

(PageID.60.) The Court finds this narrative, combined with the detailed discussion of the medical evidence, to be sufficient. Moreover, it finds there is substantial evidence to support the ALJ's RFC decision. While Plaintiff would prefer a more detailed analysis, that is not what is required by the Sixth Circuit. *See Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (finding that SSR 96–8p does not require ALJs to produce a detailed function-by-function statement in writing). Rather, "the ALJ need only articulate how the evidence in the record supports the RFC

determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Id.* at 548. (citation omitted); *see also Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 729 (6th Cir. 2013) (SSR 96–8p merely requires the ALJ to "address a claimant's exertional and nonexertional capacities and also describe how the evidence supports h[is] conclusions"). The Court finds the ALJ's analysis is sufficient to pass muster under SSR 96-8p.

Plaintiff finally argues that the ALJ did not indicate which evidence he was relying on in formulating the RFC and as such, the ALJ "substitut[ed] his unqualified assessment of the record for medical opinions by treating experts." (PageID.642.) A review of the decision demonstrates that the ALJ's RFC determination is based on substantial evidence, not the ALJ's own lay opinion. When determining a claimant's RFC, "[i]t is well established that the ALJ may not substitute his medical judgment for that of the claimant's physicians." *Brown v. Comm'r of Soc. Sec.*, No. 1:14–CV–236, 2015 WL 1431521, *7 (W.D. Mich. Mar. 27, 2015) (citing *Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006)); *see Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Charter*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). However, when evaluating the claimant's RFC, the ALJ is not required to base his RFC findings entirely on a physician's opinion. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (quoting SSR 96–5p) ("[T]o require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is

disabled.'"). "[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe*, 342 F. App'x at 157.

As discussed above, the ALJ properly considered the medical opinions in the record, and summarized his reasons for the RFC assessment. In doing so, the ALJ based his opinion, in part, on Plaintiff's daily activities, treatment, and the opinion of the consulting psychologists. The Court concludes that the ALJ did not "play doctor" in developing the RFC. Thus, this claim of error is rejected.

### 3. The ALJ Properly Discounted Plaintiff's Credibility.

At the administrative hearing, Plaintiff testified that he was impaired to an extent far greater than that recognized by the ALJ. Among other things, Plaintiff testified that although he slept through the night, his medication caused him to experience fatigue, fogginess, lack of concentration and memory, and led to an inability to stay awake for more than an hour and a half or two hours at a time. (PageID.92.) Plaintiff further stated he would need to sleep between twenty to thirty minutes every two hours. (PageID.92–93.) The ALJ found Plaintiff's allegations were "not entirely credible." (PageID.57.) Plaintiff claims the ALJ erred in doing so. (PageID.642–644.)

The Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. §

15

404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("[I]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony.") It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found that Plaintiff's subjective allegations were not fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are

virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

Substantial evidence supports the ALJ's decision here. Plaintiff argues his medications and side effects "can hardly be characterized" as conservative. (PageID.644.) While Plaintiff might disagree with the ALJ about what constitutes conservative treatment, "this does not mean [the ALJ] erred in assessing [his] credibility." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 417 (6th Cir. 2011). The record shows that the ALJ accurately described Plaintiff's treatment history in his opinion. The ALJ specifically discussed Plaintiff's medication and complained of side effects. (PageID.54–57.) In any event, the ALJ provided numerous other reasons for discounting Plaintiff's credibility. For example, the ALJ noted a remark Plaintiff made to Dr. Rafi stating he had intentionally withheld information regarding his blood disease when donating plasma. (PageID.601.) Regarding his daily activities, Plaintiff reported no problems with handling his personal care. (PageID.251.) He can prepare meals, clean, do laundry, and perform minor home repairs. (PageID.252.) He can go to the gym. (PageID.254.) The ALJ noted a statement from Dr. Ashman that taking stimulants made Plaintiff feel "more alert" when he was awake. (PageID.616.) Plaintiff was able to perform substantial gainful activity for several years while taking the medication that he now alleges causes the severe side effects. (PageID.93.) There is substantial evidence to support the ALJ's determination. Thus, Plaintiff's claim of error is denied.

## CONCLUSION

For the reasons articulated herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.

Dated: September 14, 2016            /s/ Robert Holmes Bell
                                     ROBERT HOLMES BELL
                                     UNITED STATES DISTRICT JUDGE